IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
September 29, 2015 Session Heard at Martin[1]

**STATE OF TENNESSEE v. GILBERTO CANALES, JR.**

**Appeal from the Circuit Court for Gibson County**
**No. 9217     Clayburn Peeples, Judge**

_____

**No. W2015-00359-CCA-R3-CD  -  Filed November 19, 2015**
_____

Defendant, Gilberto Canales, Jr., was indicted for one count of aggravated rape. After a jury trial, Defendant was convicted of the lesser-included offense of rape. On appeal, Defendant argues that the evidence is insufficient to support his conviction, that the trial court erred by admitting hearsay evidence, and that the prosecutor committed prosecutorial misconduct by making misleading statements and arguing improperly admitted evidence during closing argument. After a thorough review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

Mark Donahoe and Andrea Sipes Lester (on appeal), Jackson, Tennessee; and Harold E. Dorsey (at trial), Alamo, Tennessee, for the appellant, Gilberto Canales, Jr.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Garry Brown, District Attorney General; and Jason Scott, Hillary Lawler Parham, and Mark Hazelwood, Assistant District Attorneys General, for the appellee, State of Tennessee.

---

[1] Oral argument was heard in this case on September 29, 2015, on the campus of the University of Tennessee Martin, hosted by the Criminal Justice program, the Department of Behavioral Sciences and the University of Tennessee Martin College of Education, Health, and Behavioral Sciences, as well as the Kappa Epsilon chapter of the national criminal justice honor society, Alpha Phi Sigma.

## OPINION

### *Factual and Procedural Background*

This is Defendant's direct appeal from his conviction for the offense of rape in the Circuit Court of Gibson County.

The victim[2] moved from Delaware to Jackson, Tennessee, in August of 2011 to attend Union University and obtain a degree in psychology. The victim attended Fellowship Bible Church and was employed in their childcare center. She moved back to Delaware in December 2011 after the incident in this case. She was no longer attending school but had obtained her CNA license.

On November 5, 2011, the victim was working at the Fellowship Bible Church's childcare center during a conference. There were about forty people taking care of over 100 children and she saw Defendant there that day. She assumed he was also taking care of the children; she had seen him before at the same church during Sunday services. Defendant introduced himself as Gilbert, and the two had a conversation. They discussed meeting up later to continue getting to know each other, and they exchanged phone numbers.

Defendant texted the victim and asked if she wanted to get dinner that night. They agreed to meet at six o'clock at an Arby's restaurant near Union University. Defendant then drove the victim to Humboldt in his brown pickup truck. Defendant drove because the victim was new to the area. They drove to a park, sat on a bench, and talked for about an hour. When it started to get dark, Defendant suggested they leave the park.

Defendant then drove to the Regal Inn and parked in front of Room 127. Defendant pulled out a room key and told the victim to get out of the truck. The victim was scared and confused but thought Defendant was staying at the motel and needed to pick something up before dinner. When the victim did not get out of the truck, Defendant got out and went around to her side. He opened the door, told the victim to get out, and grabbed her arm. Defendant led the victim by the arm to the motel room and unlocked the door.

Once inside the room, the victim stood by the door while Defendant went around turning on lights. Defendant then sat on the edge of the bed, patted the bed next to him, and told the victim to sit down. The victim went around and sat on the other side of the

---

[2] **Error! Main Document Only.**It is the policy of this Court to protect the identity of victims of sexual crimes.

bed. Defendant came around behind her and pulled her by the shoulders back onto the bed. Defendant straddled the victim and tried to take her shirt off with one hand while holding her down with the other. The victim struggled with Defendant and said, "No. Stop. Don't." Defendant removed the victim's jacket, long sleeved shirt, tank top, and bra. Defendant tried to kiss the victim on the mouth, but she turned her head, so he kissed her on the neck and chest. Once Defendant had the victim undressed, he undressed himself while still straddling her and holding her down. The victim was crying. The victim said, "No, stop it," and Defendant replied "Not yet."

Defendant inserted two fingers into the victim's vagina. The victim continued pleading with him, but Defendant shushed her. Defendant then inserted his penis into the victim's vagina. After a few minutes, Defendant removed his penis from her vagina and moved up to her face. The victim tried to get up by lifting her head. Defendant grabbed the back of her head and forced her mouth onto his penis. The victim explained that she froze, which was her typical response to tough situations after she had been molested as a child.

Defendant removed his penis from the victim's mouth and went to the bathroom. The victim could hear water running. The victim got dressed and sent a text message to her roommate. The victim did not go into detail but explained she was in trouble. She told her roommate to meet her at her car. The victim did not call the police because she did not know where she was.

Defendant came out of the bathroom and told the victim that they were leaving. The victim got back into Defendant's truck, and they drove back to Jackson. Defendant asked the victim who she was texting and whether she was going to tell anybody what happened. She told Defendant that she would not tell. Instead of taking the victim back to her car at the Arby's, Defendant drove her to the campus of Union University. Defendant said he was taking her to her dorm, but she did not want him to know where her dorm was, so she had him stop at the entrance.

The victim walked to her dorm room and told her roommate and some other people what happened. She was taken to the hospital for a rape kit. The victim had bruises and red marks on her shoulders from where Defendant held her down. The victim then went to the Humboldt Police Department to give a statement. The victim was shown a photographic lineup, and she identified Defendant as the man that raped her.

On cross-examination, defense counsel asked the victim about her preliminary hearing testimony, during which the State asked her, "Did you at first initially just not want to have sex and then finally agreed to do it that night?" to which the victim responded, "I'm not gonna [sic] say I agreed to it." The victim explained that what she meant was that she froze and stopped fighting but that she did not agree to have sex. The

victim denied that when she said that Defendant "pulled [her] gently into the room," that she meant that he did not force her into the room. The victim admitted that she willingly got into a truck and left Jackson with a man whose last name she did not know. The victim insisted that she struggled with Defendant when he was trying to take her shirt off by crossing her arms over her chest, but none of her clothes were torn. The victim told the nurse who examined her that Defendant attempted to anally assault her, and she explained that she thought that is what he was going to do when he unsuccessfully tried to turn her onto her stomach. She did not mention it in any of her other statements or testimony because "[i]t wasn't on [her] mind."

The victim reiterated that she met Defendant at Fellowship Bible Church during a conference and that she thought he either had children in the childcare center or was working there as a volunteer. The victim denied that she met Defendant online through the website Craigslist. The victim admitted that she thought there was a stigma attached to women meeting men online and that she would be ashamed if she had done that. On redirect examination, the victim denied that she met with Defendant in order to "hook up."

Sergeant Tony Williams, a detective with the Humboldt Police Department, responded to a call on November 6, 2011, from the hospital in Jackson about a possible rape victim. The victim was being examined by a nurse when he arrived. Sergeant Williams observed bruises on the victim's neck, shoulder, and arm. He took a brief statement from the victim. The victim told Sergeant Williams that she had met a man named Gilbert and that he had forced her into a hotel room in Humboldt and raped her. She stated that she did not know which hotel because she was from out of state and was not familiar with Humboldt. Sergeant Williams instructed the victim to come to his office the next day to give a formal statement.

After the victim gave the formal statement, Sergeant Williams had her show him where she had gone with Defendant. The victim directed him to a park near a cemetery; Sergeant Williams explained that the park is somewhat hidden and is not very well known, even among people who live in town. The victim then directed Sergeant Williams to the motel and showed him the room she had been taken to. Sergeant Williams obtained a receipt that had the name and driver's license number of the person who had rented the room. Sergeant Williams then made a photographic lineup and showed it to the victim. The victim identified Defendant as the man who raped her.

Sergeant Williams spoke to Defendant on November 9, 2011. Sergeant Williams read Defendant his *Miranda* rights. The State played an audio recording of Defendant's statement. Defendant told Sergeant Williams that the victim was with him when he rented the room, but Sergeant Williams told Defendant that the motel manager and the receipt indicated that Defendant rented the room earlier in the day. Defendant denied that

he took the victim to the park. Defendant admitted that he had sex with the victim but insisted that he did not rape her. Defendant claimed that the victim initiated sex. Defendant said that he met the victim online but was not able to provide the name of the website. Sergeant Williams testified that he checked Craigslist and Facebook but could not find anything connected to the victim.

Lucinda Bridges,[3] a registered nurse certified as a sexual assault nurse examiner, examined the victim just after midnight on November 6, 2011. Ms. Bridges noted bruises to the victim's neck and left breast and some areas of tenderness on the inside of both of her thighs. Ms. Bridges then performed a vaginal exam and noted a small tear on the posterior fourchette. The State entered into evidence photographs of the victim's injuries. Ms. Bridges explained that a tear to the posterior fourchette was the most common area of injury from a sexual assault. According to Ms. Bridges, an injury to that particular area occurs as a result of some type of blunt force trauma when the woman's body is not ready for sexual intercourse.

On cross-examination, Ms. Bridges admitted that she could not say that the victim had been raped. Ms. Bridges also explained that the bruises on the victim's neck and breast were "hickeys" caused by sucking rather than pressure, consistent with the victim's report. On redirect examination, Ms. Bridges stated that the victim reported that Defendant had his hand on her neck but did not strangle her.

Defendant did not testify but presented the testimony of Melissa Workman, the Administrative Assistant and custodian of records for the Fellowship Bible Church. According to Ms. Workman, the church keeps records of all employees and volunteers who work with children. All volunteers who do not have children are background screened. Ms. Workman found no record of Defendant working or volunteering at the Fellowship Bible Church. The State stipulated that Defendant did not have any children in November of 2011.

Ms. Workman stated that the Fellowship Bible Church has over 1000 members. The church does not keep records of who attends Sunday services and that the only way they would have a record of someone attending is if that person filled out a visitor card. Ms. Workman admitted that it was possible for someone to have attended the conference on November 5, 2011, without anyone knowing they were there, but the childcare center was in a different building and someone would have known they were there before they entered a classroom.

---

[3] Ms. Bridges married before trial; at the time of the incident, her name was Lucinda Long.

The jury found Defendant guilty of the lesser included offense of rape. The trial court sentenced Defendant to eight years' incarceration. Defendant filed a motion for new trial, which was denied by the trial court on February 9, 2015. Defendant filed a timely notice of appeal.

*Analysis*

On appeal, Defendant argues that the evidence is insufficient to support his conviction, that the trial court erred by admitting hearsay evidence during the testimony of Sergeant Williams, and that the prosecutor committed prosecutorial misconduct by making misleading statements and arguing improperly admitted evidence during closing argument. The State responds that the evidence is sufficient to support Defendant's conviction for rape, that Defendant failed to object to the hearsay evidence contained within his interview with Sergeant Williams and that it does not merit plain error review, and that the statements in the prosecutor's closing argument were properly based on the evidence. We will address each issue in turn.

*I. Sufficiency of the Evidence*

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. The relevant question is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury's verdict replaces the presumption of innocence with one of guilt; therefore, the burden is shifted onto the defendant to show that the evidence introduced at trial was insufficient to support such a verdict. *State v. Reid*, 91 S.W.3d 247, 277 (Tenn. 2002). The prosecution is entitled to the "strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom." *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (quoting *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). The standard of review is the same whether the conviction is based upon direct evidence, circumstantial evidence, or a combination of the two. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009).

Furthermore, questions concerning the "credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted to the jury as the trier of fact." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008)). This is because the jury has "the benefit of hearing witness testimony and observing witness demeanor." *State v. Robinson*, 400 S.W.3d 529, 533 (Tenn. 2013). As the Tennessee Supreme Court explained almost half a century ago:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). Therefore, "[a] guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *Reid*, 91 S.W.3d at 277 (quoting *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997)). It is not the role of this Court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. *Id.*; *Dorantes*, 331 S.W.3d at 379.

Rape is defined as the unlawful sexual penetration of a victim by the defendant accompanied by any of the following circumstances: (1) force or coercion is used to accomplish the act; (2) the sexual penetration is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the penetration that the victim did not consent; (3) the defendant knows or has reason to know that the victim is mentally defective, mentally incapacitated, or physically helpless; or (4) the sexual penetration is accomplished by fraud. T.C.A. § 39-13-503. Sexual penetration is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's . . . body, but emission of semen is not required." T.C.A. § 39-13-501(7).[4] Coercion is defined as the "threat of kidnapping, extortion, force or violence to be performed immediately or in the future," T.C.A. § 39-13-501(1), and force is defined as "compulsion by the use of physical power or violence," T.C.A. § 39-11-106(12).

In the light most favorable to the State, the evidence shows that the victim and Defendant arranged to meet at an Arby's near Union University in Jackson. Defendant then drove the victim to Humboldt. The victim testified that they first went to a park to talk and get to know each other. Defendant then drove the victim to the Regal Inn where he had rented a room. Defendant grabbed the victim by the arm and led her into the motel room. Defendant forced the victim onto the bed, straddled her, removed her

---

[4] The victim testified to three separate acts of penetration, but the State did not make an election of offenses. Defendant did not raise the election issue in either his motion for new trial or on appeal; therefore, it is waived. *See* Tenn. R. Crim. P. 30(b); Tenn. R. App. P. 3(e).

clothing while she struggled with him, and penetrated her vagina with both his fingers and his penis. The victim repeatedly told Defendant to stop. Defendant then grabbed the back of the victim's head and penetrated her mouth with his penis. While Defendant cleaned up in the bathroom, the victim texted her roommate to tell her that she was in trouble. Upon returning to her dorm room, the victim told her roommate and others that she had been raped. The victim was taken to the hospital where she was examined by sexual assault nurse examiner Lucinda Bridges. Ms. Bridges noted bruises on the victim that were consistent with hickeys and a tear in the victim's vagina that was consistent with forcible penetration without adequate lubrication. Sergeant Williams showed the victim a photographic lineup, and she identified Defendant as the man who raped her. Sergeant Williams spoke to Defendant, who admitted having sex with the victim but claimed that it was consensual.

Defendant does not dispute that he had sexual intercourse with the victim but argues that the victim was not credible on the issue of consent. As stated above, credibility determinations are the province of the jury, who had "the benefit of hearing witness testimony and observing witness demeanor." *Robinson*, 400 S.W.3d at 533. Any inconsistencies between the victim's preliminary hearing testimony and her trial testimony were resolved by the jury in rendering its verdict. "Although inconsistencies or inaccuracies may make the witness a less credible witness, the jury's verdict will not be disturbed on appeal unless the inaccuracies or inconsistencies are so improbable or unsatisfactory as to create a reasonable doubt of the appellant's guilt." *State v. Radley*, 29 S.W.3d 532, 537 (Tenn. Crim. App. 1999). Therefore, we will not reevaluate witness credibility on appeal. Based on the evidence presented, including the fact that the victim told Defendant to stop, there was more than sufficient evidence to prove that Defendant either knew or had reason to know that the victim did not consent to any type of sexual penetration.

Defendant also argues that there was insufficient proof of force or coercion. Defendant points to old case law for the proposition that in order for a defendant to be convicted of rape, the victim "must have resisted attack in every way possible and must have continued such resistance until she was overcome by force, was insensible through fright, or ceased resistance from exhaustion or fear of death or great bodily harm." *King v. State*, 357 S.W.2d 42, 45 (Tenn. 1962). However, as this Court noted in 1997, "[r]esistance is not an element of the offense [of rape]. All that is required is either force or coercion." *State v. Antonio Kendrick*, No. 02-C-01-9604-CR00121, 1997 WL 686266, at *4 (Tenn. Crim. App. Nov. 5, 1997), *perm. app. denied* (Tenn. July 13, 1998).

There was more than sufficient evidence of force or coercion presented. The victim testified that Defendant grabbed her arm, forced her out of the truck, and led her to the motel room. Once inside, Defendant forced the victim onto the bed by grabbing her shoulders, straddled her, and used one hand to hold her down while the other removed

her clothing.  Ms. Bridges confirmed that the victim had several bruises on her neck, shoulder, and arm.  The victim also had a tear to her vagina that Ms. Bridges explained was consistent with blunt force trauma.  Given the foregoing, a reasonable jury could find that Defendant used force or coercion to accomplish the sexual penetration of the victim.  Defendant is not entitled to relief.

## *II.  Evidentiary Issues*

Defendant next contends that the trial court erred by allowing the jury to hear hearsay evidence during the recording of Defendant's interview with Sergeant Williams.  During the interview, Sergeant Williams told Defendant that he had spoken to the manager of the Regal Inn and that the manager did not remember Defendant renting the room after 6:00 p.m.  Defendant also argues that the best evidence rule was violated because Sergeant Williams told Defendant that he had seen the hotel receipt showing that Defendant did not rent the room after 6:00 p.m., but the receipt was not entered into evidence.  The State responds that Defendant failed to raise either of these objections during trial or in the motion for new trial and that they are, therefore, waived.  The State also argues that Defendant has not established that he is entitled to plain error relief.

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Tenn. R. Evid. 801(c).  Hearsay is generally not admissible.  Tenn. R. Evid. 802.  The best evidence rule requires that the original of a writing, recording, or photograph is required to prove the content thereof.  Tenn. R. Evid. 1002.  "When a party does not object to the admissibility of evidence, . . . the evidence becomes admissible notwithstanding any other Rule of Evidence to the contrary, and the jury may consider that evidence for its 'natural and probative effects as if it were in law admissible.'"  *State v. Smith*, 24 S.W.3d 274, 280 (Tenn. 2000) (quoting *State v. Harrington*, 627 S.W.2d 345, 348 (Tenn. 1981)).

We agree with the State that Defendant has waived this issue.  *See* Tenn. R. Crim. P. 30(b); Tenn. R. App. P. 3(e).  Parties desiring to raise an issue on appeal must properly preserve that issue both in the trial court and on appeal.  *State v. Bledsoe*, 226 S.W.3d 349, 353 (Tenn. 2007).  While Defendant did object to Sergeant Williams testifying as to what the motel manager told him, Defendant failed to object either before, during, or after the playing of the recorded interview to Sergeant Williams's statements with regard to what the motel manager told him and what the receipt showed.  Failure to raise a contemporaneous objection to testimony "effectively waives the issue."  *State v. Thacker*, 164 S.W.3d 208, 239 (Tenn. 2005).  "An objection that is not raised at trial cannot be raised for the first time on appeal."  *State v. Joy A. Stinson*, No. E1999-02082-CCA-R3-CD, 2000 WL 1449877, at \*6 (Tenn. Crim. App. Sept. 29, 2000) (citing *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 702 (Tenn. Ct. App. 1999); *State v. Crawford*, 620 S.W.2d 543, 545 (Tenn. Crim. App. 1981)), *perm. app. denied* (Tenn. May 7, 2001).

Additionally, in the motion for new trial, Defendant made a general assertion that the trial court erred in the admission of evidence. Issues must be specifically stated in the motion for new trial. *See* Tenn. R. App. P. 3(e); Tenn. R. Crim P. 47. When the issue does not sufficiently advise the trial court or the State of the basis of the error, the issue should not be considered by the trial court when ruling on the motion for new trial and will not be considered by this Court on appeal. *See State v. Gauldin*, 737 S.W.2d 795, 797-98 (Tenn. Crim. App. 1987). Finally, at the motion for new trial hearing, defense counsel conceded that there were no evidentiary issues that justified reversal. Therefore, this issue has been waived unless Defendant can establish that the trial court committed plain error. *See* Tenn. R. App. P. 36(a), (b).

When an error was not included in a motion for a new trial, a defendant may seek relief under plain error analysis. *See* Tenn. R. App. P. 36(b). There are five factors that must be established before an error may be recognized as plain:

> (a) the record clearly establishes what occurred in the trial court; (b) a clear and unequivocal rule of law was breached; (c) a substantial right of the accused was adversely affected; (d) the accused did not waive the right for tactical reasons; and (e) consideration of the error is "necessary to do substantial justice."

*Smith*, 24 S.W.3d at 282 (adopting the test established by *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). The burden is on the accused to persuade the appellate court that the trial court committed plain error and that the error was of "such a great magnitude that it probably changed the outcome of the trial." *Id.* at 283 (quoting *Adkisson*, 899 S.W.2d at 642); *see also* Tenn. R. App. P. 36(b) (relief may be granted when an "error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process"). "[C]omplete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id.*

First, we note that because Defendant did not argue for the application of the plain error doctrine on appeal, he has not carried his burden of persuading this Court that any of the five *Adkisson* factors have been met or that the trial court committed an error was of "such a great magnitude that it probably changed the outcome of the trial." *Id.* at 283 (quoting *Adkisson*, 899 S.W.2d at 642). Additionally, Defendant has not shown that a clear and unequivocal rule of law has been breached. As stated above, when a party fails to object to certain evidence, particularly hearsay evidence, it becomes admissible as substantive evidence. *Id.* at 280. Merely because certain evidence is "subject to objection . . . does not mean that such evidence cannot be considered for its substantive value when no objection is raised." *Id.* Because the admissibility of hearsay evidence is so dependent upon the circumstances of each particular case, this Court has held that we

- 10 -

will rarely extend plain error review to an evidentiary issue like this one. *State v. Ricky E. Scoville*, No. M2006-01684-CCA-R3-CD, 2007 WL 2600540, at *2 (Tenn. Crim. App. Sept. 11, 2007), *no perm. app. filed*.

Defendant has also not shown that the issue was not waived for tactical reasons. In opening statements, defense counsel stated, "There's also going to be another big dispute about when he rented the room." It is clear that defense counsel knew the recorded statement included a discussion of when Defendant rented the room. A portion of the statement was redacted, indicating that the redacted portion was deemed inadmissible. During Sergeant William's testimony, Defendant raised a hearsay objection with regard to anything the victim told Sergeant Williams, as well as with regard to what the motel manager told Sergeant Williams about who rented the room. During the playing of Defendant's recorded interview, Defendant objected to the portion where Sergeant Williams read the victim's statement to Defendant as being cumulative. After the recording and transcript thereof had been entered into evidence, Defendant objected when the State asked Sergeant Williams if the manager told him whether the victim was with Defendant when he rented the room. During a sidebar conference, defense counsel expressed concern that the State might call the motel manager in rebuttal. Then, in closing arguments, defense counsel used the absence of the motel manager to argue that Sergeant Williams's statements were mere bluffs designed to induce Defendant to confess. Based on the foregoing, we conclude that Defendant's decision to not object to the portion of the statement in which Sergeant Williams referred to what the motel manager told him and what the hotel receipt indicated about the time of the room rental was for tactical reasons. The plain error rule "should not be used to provide a second bite at the apple for a defendant whose deliberate trial strategy failed." *State v. Thompson*, 36 S.W.3d 102, 108 (Tenn. Crim. App. 2000).

Finally, Defendant has not shown that consideration of the error is necessary to do substantial justice. This factor requires a review of the proof supporting the conviction. *See State v. Hatcher*, 310 S.W.3d 788, 814 (Tenn. 2010) (holding that proof supporting conviction for murder was so overwhelming that "error in the jury instructions and the prosecution's error during closing argument were not so prejudicial that they probably changed the outcome of the trial"). As discussed above, there was sufficient proof that the victim did not consent to any type of sexual penetration and that the Defendant used force or coercion to accomplish the penetration, regardless of whether Defendant rented the motel room before or after he met the victim at Arby's. Because the proof overwhelmingly supported Defendant's conviction for rape, we cannot say that consideration of this issue is necessary to do substantial justice. Defendant is not entitled to plain error review of this issue.

### III. Prosecutorial Misconduct

- 11 -

Finally, Defendant argues that that the State committed prosecutorial misconduct during its closing argument. Specifically, Defendant argues that the prosecutor misstated the law when she said that because Defendant admitted to sexual penetration, the jury need not consider that element of aggravated rape. Additionally, Defendant argues that the prosecutor improperly referred to the hearsay statements contained within the Defendant's statement to police. The State responds that the statements did not amount to prosecutorial misconduct but, even if they did, any error was harmless.

Closing argument is "a valuable privilege that should not be unduly restricted." *Terry v. State*, 46 S.W.3d 147, 156 (Tenn. 2001); *see State v. Bane*, 57 S.W.3d 411, 425 (Tenn. 2001); *State v. Cauthern*, 967 S.W.2d 726, 737 (Tenn. 1998). Closing arguments "have special importance in the adversarial process," allowing the parties "to present their theory of the case and to point out the strengths and weaknesses in the evidence to the jury." *State v. Banks*, 271 S.W.3d 90, 130 (Tenn. 2008). Attorneys "should be given great latitude in both the style and the substance of their arguments." *Id.* at 131. "[A] prosecutor's closing argument must be temperate, must be based on the evidence introduced at trial, and must be pertinent to the issues in the case." *Id.* Although not exhaustive, this Court has recognized five general areas of prosecutorial misconduct during closing arguments: (1) intentionally misstating the evidence or misleading the jury as to the inferences it may draw; (2) expressing personal beliefs or opinions as to the truth or falsity of any testimony or evidence or the guilt of the defendant; (3) inflaming or attempting to inflame the passions or prejudices of the jury; (4) injecting issues broader than the guilt or innocence of the accused; (5) arguing or referring to facts outside the record unless the facts are matters of common public knowledge. *State v. Goltz*, 111 S.W.3d 1, 6 (Tenn. Crim. App. 2003).

A trial court has significant discretion in controlling closing argument, and its decisions relative to the contents of argument may only be reversed upon an abuse of discretion. *Terry*, 46 S.W.3d at 156; *State v. Trusty*, 326 S.W.3d 582, 607 (Tenn. Crim. App. 2010). "A criminal conviction should not be lightly overturned solely on the basis of the prosecutor's closing argument." *Banks*, 271 S.W.3d at 131. Instead, "an improper closing argument will not constitute reversible error unless it is so inflammatory or improper that it affected the outcome of the trial to the defendant's prejudice." *Id.* In reviewing the propriety of a prosecutor's closing argument, this Court considers:

(1) the conduct at issue in light of the facts and circumstances of the case,
(2) the curative measures undertaken by the trial court and the prosecution,
(3) the intent of the prosecutor in making the improper argument, (4) the cumulative effect of the improper argument and any other errors in the record, and (5) the relative strengths and weaknesses of the case.

*Id.*; *Judge v. State*, 539 S.W.2d 340, 344 (Tenn. Crim. App. 1976).

In this case, Defendant argues that the prosecutor misstated the law when she said:

"To prove aggravated rape, the State must prove essential elements. Unlawful sexual penetration that's accomplished by force or coercion that results in bodily harm. Now the Defendant has admitted sexual penetration. I submit to you that you don't have to consider that element any longer."

Defendant objected, arguing that "[s]exual penetration is not an element. Unlawful sexual penetration is an element." The trial court allowed defense counsel to correct the prosecutor's statement during his closing argument and, during jury instructions, told the jury that the statements of the attorneys were not evidence. During his closing argument, defense counsel argued that "it's not a crime for two people over the age of 18 . . . to have sex and forcible penetration is what the element is that they have to prove." On appeal, Defendant argues that the prosecutor's statement had a prejudicial effect on Defendant, "ris[ing] to the level of jury contamination," and that the curative measures taken by the trial court were insufficient to ameliorate the harmful effect.

We agree with the State that the prosecutor did not misstate the law. The prosecutor's statement that Defendant admitted to sexual penetration was in direct reference to the evidence admitted at trial—namely, Defendant's statement to Sergeant Williams. The prosecutor was arguing that because Defendant admitted to having sex with the victim, the only disputed elements were whether the victim consented and whether Defendant used force or coercion. While the rape statute refers to "unlawful sexual penetration," the term that is defined in the statutes is "sexual penetration"; it is the other elements of rape—such as lack of consent or the use of force or coercion—that make the sexual penetration unlawful. Additionally, even if this statement were in error, Defendant has not shown that it was "so inflammatory or improper that it affected the outcome of the trial to the defendant's prejudice." *Banks*, 271 S.W.3d at 131. The jury still heard and was able to consider Defendant's defense theory that the victim consented. Therefore, Defendant is not entitled to relief.

Defendant also argues that the prosecutor improperly referred to the hearsay contained within Defendant's statement to Sergeant Williams which, as explained above, he argues was improperly admitted. Defense counsel objected, arguing that the motel manager never testified and that the statement could have been a bluff by the detective. The trial court ruled that the prosecutor could argue "her interpretation" of the evidence and that defense counsel would have an opportunity to present his interpretation during closing argument. During his closing argument, defense counsel argued that the proof that Defendant rented the room prior to picking up the victim was irrelevant. Additionally, defense counsel pointed out that the State did not call the motel manager to

testify and that Sergeant Williams's statement may have been a bluff to get Defendant to confess.

As discussed above, this allegedly improper evidence was admitted without objection. Because Defendant did not raise a contemporaneous objection to the introduction of the hearsay contained within his statement to Sergeant Williams, the evidence became admissible notwithstanding any other Rule of Evidence. *See Smith*, 24 S.W.3d at 280. Defendant relies on *State v. Sexton*, 368 S.W.3d 371, 425 (Tenn. 2012), for the proposition that a prosecutor should not be able to argue improperly admitted evidence despite a favorable ruling regarding admissibility. However, that case is distinguishable because the improper evidence was the subject of a pre-trial 404(b) hearing and was objected to at trial. *See id.* at 379, 415. Therefore, the defendant in *Sexton* properly preserved his objection to the evidence on appeal. In this case, Defendant did not object to the admission of the evidence at trial and, as explained above, has not established that the admission of the evidence was plain error. Therefore, the prosecutor was arguing evidence that had been admitted without objection.

Even if the prosecutor's argument was in error, Defendant has not shown that it was "so inflammatory or improper that it affected the outcome of the trial to the defendant's prejudice." *Banks*, 271 S.W.3d at 131. Applying the *Judge* factors, *see* 539 S.W.2d at 344, Defendant has not shown any improper intent on the part of the prosecutor in arguing evidence that had been admitted without objection. There were no other errors in this case and, given the victim's vaginal tear which was consistent with forcible penetration, the State's proof of unlawful sexual penetration was strong. Finally, the trial court instructed the jurors that the arguments of counsel were not evidence and that they were the final arbiters of the proof. Defendant is not entitled to relief.

*Conclusion*

Based on the foregoing, we affirm the judgment of the trial court.


_____
TIMOTHY L. EASTER, JUDGE